**The STATE of Ohio, Appellee,**

**v.**

**LESTER, Appellant.**

[Cite as *State v. Lester* (1996), 111 Ohio App.3d 736.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69243.

Decided June 17, 1996.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney and *Lisa Reitz Williamson,* Assistant Prosecuting Attorney, for appellee.

*Valerie R. Arbie,* Cuyahoga County Assistant Public Defender, for appellant.

PATRICIA ANN BLACKMON, Judge.

Defendant-appellant Natalie Lester appeals a decision from the trial court convicting her of trafficking in food stamps and theft and sentencing her accordingly. Lester assigns the following error for our review:

"The trial court erred to the prejudice of the appellant when it overruled appellant's motion to dismiss the case because the indictment was not filed within the six-year statute of limitations mandated by R.C. § 2901.13."

Having reviewed the record of the proceedings and the legal arguments presented by the parties, we affirm the decision of the trial court. The apposite facts follow.

On June 29, 1993, Natalie Lester was indicted for theft and trafficking in food stamps. The charges stemmed from conduct from May 1, 1986 until May 30, 1987, when Lester fraudulently obtained welfare and food stamps by claiming to be unemployed when she was actually working at a local nursing home. The auditor for the state of Ohio uncovered Lester's employment on December 11, 1990 during a welfare fraud investigation but did not notify the Cuyahoga County Department of Human Services ("CCDHS") until July 13, 1992.

Lester filed a motion to dismiss the indictment, claiming that the applicable statute of limitations had expired. The trial court denied the motion, finding that the prosecutor had received notice of the fraud no earlier than July 13, 1992. Citing *State v. Dauwalter* (1988), 43 Ohio Misc.2d 17, 540 N.E.2d 336, the court found that the state had one year, or until July 13, 1993 to bring an indictment. Because Lester was indicted on June 29, 1993, her indictment was found to be timely. Lester's motion to dismiss the indictment was denied. This appeal followed.

In her assignment of error, Lester argues that the indictment against her was not timely filed. R.C. 2901.12 provides as follows:

"Except as otherwise provided in this section, a prosecution shall be barred unless it is commenced within the following periods after an offense is committed: (1) for a felony other than aggravated murder of murder, six years

" * * *

"If the period of limitation provided in division (A) of this section has expired, prosecution shall be commenced for an offense of which an element is fraud or breach of a fiduciary duty, within one year after discovery of the offense either by an aggrieved person, or by his legal representative who is not himself a party to the offense."

The statute of limitations was further defined by *State v. Dauwalter, supra,* 43 Ohio Misc.2d 17, 540 N.E.2d 336, and *State v. Mitchell* (1992), 78 Ohio App.3d 613, 605 N.E.2d 978. In *Dauwalter* and *Mitchell,* the court stated that prosecutions under 2901.13(A) and (B) are barred unless the indictment is returned either (1) within the original six-year period if the fraud is discovered sooner than five years from the date of the offense, or (2) within one year after discovery of the offense when discovery occurs at some time during the fifth year of the six-year limitation, or (3) within one year after discovery of the offense if discovery occurs after the six-year limit has run.

The sole issue raised by this appeal is whether the auditor's knowledge that Lester was employed may be imputed to CCDHS for purposes of determining whether the complaint against Lester was timely filed. Lester argues that, since the auditor became aware of her employment on December 11, 1990, the Dauwalter rule extended the statutory time by one year, to December 11, 1991. Lester argues that, because both the auditor's officer and CCDHS are agents of the state of Ohio, the auditor's knowledge of her employment should have been imputed to CCDHS for purposes of the statute of limitations.

The statute refers to discovery by the "aggrieved party or his representative." CCDHS is the aggrieved party because it paid the checks. Lester argues that the audit investigation was conducted as the investigative arm of the county agencies. She cites *State v. Young* (1981), 2 Ohio App.3d 155, 2 OBR 171, 440 N.E.2d 1379, which says that "although a welfare dept is entitled to a reasonable time to investigate suspected fraud before the discovery is official, the fact that the investigative department had knowledge within the statutory time requires state to be held accountable for the info." *Id.* at 157, 2 OBR at 172–173, 440 N.E.2d at 1381.

However, in *Young,* the fraud was uncovered by an investigative unit called the "Match Project" operated by the Department of Health, Education and Welfare.

The Match Project compared the social security numbers of welfare recipients with those listed on state income tax returns to see what income they had. If the tax returns listed income other than welfare, the case was referred to the welfare department investigator. On June 5, 1978, the Match Project discovered that Young had made false statements in connection with her welfare checks and food stamps. Also in 1978, Young's employer was contacted by a welfare representative and asked about her employment and income. However, Young was not indicted until April 8, 1980. The court found that the state had unduly delayed commencing the action against Young. While recognizing that several weeks of investigation by the welfare department was reasonable in fraud cases, a five-month delay was unreasonable. *Id.* at 157, 2 OBR at 172–173, 440 N.E.2d at 1381.

We find several important distinctions between *Young* and the instant case. The Match Project was described as "a unit that was brought into use by the Health, Education and Welfare Department." In addition, the fact that a welfare department representative contacted Young's employer in 1978 established that the welfare department had some idea that Young had given false statements in connection with her welfare payments.

In this case, there is no indication that anyone at the welfare department knew anything about Lester's fraud until July 1992. Lester argues that the auditor's office is the legal representative for CCDHS. However, she provides us with no support for this conclusion.

Several sections of the Ohio Revised Code suggest that the auditor's office and the CCDHS are separate entities and that the auditor's office has no power to prosecute an action for welfare fraud.

R.C. 5101.181(C)(1) provides:

"The auditor of state shall initiate action leading to prosecution, where warranted, of recipients who received overpayments by forwarding the name of each recipient who received overpayment, together with other pertinent information, to the director of human services and the attorney general, to the district director of human services of the district through which public assistance was received, and to the county director of human services and county prosecutor of the county through which public assistance was received."

R.C. 117.34 states:

"No cause of action on any matter set forth in any report of the auditor of state made under this chapter shall accrue until the report is filed with the officer or legal counsel whose duty it is to institute civil action for enforcement. No statutes of limitations otherwise applicable to the cause of action shall begin to run until the date of filing."

These sections support the position that the statute of limitations did not begin to run in this case until the CCDHS had the auditor's report. At that point, as the aggrieved and investigative agency, its knowledge of the fraud triggered its investigation and thus started the statutory time clock.

█ The fact that Lester was employed did not indicate fraud until coupled with the fact that she had received welfare benefits during her employment. This connection did not occur until July 1992 when the auditor's report was forwarded to CCDHS. Applying the reasoning of *Dauwalter* and *Mitchell,* because the fraud was discovered in the fifth year of the six-year limitation, the limitations period was extended by one year, until July 1993. Because Lester was indicted in June 1993, her indictment was timely. Lester's assignment of error is overruled.

*Judgment affirmed.*

DYKE and NAHRA, JJ., concur.